JOURNAL ENTRY AND OPINION
{¶ 1} Defendant Joseph Thomas appeals from his convictions for robbery, failure to comply with the order of a police officer, escape, obstruction of official business and receiving stolen property. For the reasons set forth below, we affirm defendant's convictions but remand for re-sentencing.
 {¶ 2} On August 4, 2003, defendant was indicted pursuant to a five-count indictment in connection with the theft of a vehicle belonging to Denise Drenski. In Count One, defendant was charged with aggravated robbery with a notice of prior conviction and a repeat violent offender specification. In Count Two, defendant was charged with failure to comply with the order of a police officer. Counts Three and Four charged him with escape and obstructing official business, respectively, and Count Five charged him with receiving stolen property. Defendant pled not guilty and the matter proceeded to a jury trial on December 8, 2003. As trial commenced the state amended the aggravated robbery charge to robbery and the court permitted the defense to bifurcate the specifications.
 {¶ 3} Denise Drenski testified that, at approximately 8:30 a.m. on June 25, 2003, she stopped at a pay phone at West 117th Street and Weston to call her boyfriend and let him know that she was on her way to his apartment. As she stood at the pay phone, defendant approached from the rear, struck her in the area of her lower neck and upper back. Drenski fell to the ground, striking her knee. Defendant got into her vehicle and looked directly at Drenski as he fled. Drenski stated that she clearly observed defendant, and noticed that he was wearing a green shirt and baseball cap.
 {¶ 4} Drenski further testified that she called police from the pay phone and described her assailant, the car, and the direction in which he fled. She then walked the remainder of the distance to her boyfriend's house. Approximately twenty minutes later, the police informed her that they stopped a man driving her car in the area of West 76th Street and Colgate. Drenski went to the area and identified defendant as her assailant. According to Drenski, defendant was wearing the same clothing she had observed earlier and she was positive that he was the attacker.
 {¶ 5} The police officers at the scene recovered Drenski's credit cards from defendant's pocket, but other items were missing from the car, including Drenski's portable DVD player, purse, cell phone and wallet.
 {¶ 6} On cross-examination, Drenski admitted that she did not go to the hospital for her injuries.
 {¶ 7} Cleveland Police Officer Annette Godfrey testified that she responded to a radio broadcast concerning the incident. According to Godfrey, Drenski was upset and crying but provided a description of the assailant, including his clothing.
 {¶ 8} Cleveland Police Officer Donald Wellinger testified that he also spoke with Drenski and obtained a description of her car and its license plate number. At approximately 9:20 a.m., he observed the car proceeding northbound on West 65th Street. He activated his overhead lights and siren to stop the vehicle. The driver sped up, however, driving through stop signs and traffic lights. Wellinger and his partner continued to follow the vehicle until it ultimately crashed into a pole at West 76th Street and Elton. Drenski identified the driver as her assailant, and the officers then took him to the hospital. At this time, his hands were cuffed behind his back. Later, as they proceeded to the Justice Center, Wellinger noted that defendant was now handcuffed with his hands in the front of his body. As Wellinger opened the car door for defendant, he fled. The officers apprehended him in the parking lot of the Justice Center. Later during booking, defendant gave the officer incorrect names and dates of birth.
 {¶ 9} Cleveland Police Officer Albert Scott also testified that defendant did not stop when the officers activated their lights and siren, and also stated that he had difficulty handcuffing defendant because defendant continued to be uncooperative. As Scott struggled with defendant, Drenski's credit cards fell to the ground. Scott also testified that, after he read defendant his rights, defendant stated that he had taken the car because he did not have bus fare.
 {¶ 10} Defendant was subsequently convicted of all charges and sentenced to a total of eleven years. He now appeals and assigns seven errors for our review.
 {¶ 11} Defendant's first and second assignments of error are interrelated and state:
 {¶ 12} "The trial court erred by denying a motion for acquittal on the charge of robbery, as amended to R.C. 2911.02(A)(2), due to the insufficient evidence of physical harm."
 {¶ 13} "The conviction for robbery, under R.C. 2911.02(A)(2), is against the manifest weight of the evidence due to the overwhelming testimonial evidence that the victim suffered no physical harm."
 {¶ 14} Within these assignments of error, defendant contends that the state failed to properly demonstrate that defendant caused physical harm to Drenski.
 {¶ 15} Crim.R. 29(A) governs motions for acquittal and provides for a judgment of acquittal if the evidence is insufficient to sustain a conviction. Pursuant to Crim.R. 29, a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt. A Crim.R. 29(A) motion for acquittal "should be granted only where reasonable minds could not fail to find reasonable doubt." State v. Apanovitch (1987),33 Ohio St.3d 19, 23, 514 N.E.2d 394; State v. Jordan, Cuyahoga App. Nos. 79469 and 79470, 2002-Ohio-590.
 {¶ 16} The standard for a Rule 29 motion is virtually identical to that employed in testing the sufficiency of the evidence. State v.Turner, Franklin App. No. 04AP-364, 2004-Ohio-6609, citing State v.Thompkins (1997), 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541. An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Thompkins, supra.
 {¶ 17} The elements of robbery are statute in question, R.C. 2911.02(A), states that "no person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following: (1) Have a deadly weapon on or about the offender's person or under the offender's control; (2) Inflict, attempt to inflict, or threaten to inflict physical harm on another; (3) Use or threaten the immediate use of force against another."
 {¶ 18} The Revised Code defines physical harm to persons as "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3).
 {¶ 19} In this matter, Drenski testified that defendant struck her in the lower neck/upper back area, which caused a type of "whiplash" injury, and that when she fell, she scraped her knee and hit her hand. We find this sufficient to constitute physical harm. State v. Kutnar
(September 30, 1999), Lake App. No. 98-L-117.
 {¶ 20} The first assignment of error is without merit.
 {¶ 21} In State v. Thompkins, supra, the court illuminated its test for manifest weight of the evidence as follows:
 {¶ 22} "Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." Black's [Law Dictionary (6 Ed. 1990)], at 1594."
 {¶ 23} When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "`thirteenth juror'" and disagrees with the factfinder's resolution of the conflicting testimony. Id., citing Tibbsv. Florida (1982), 457 U.S. 31, 45, 102 S. Ct. 2211, 2220, 72 L.Ed. 2d 652,663. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. See Statev. Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720-721.
 {¶ 24} The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. Id.
 {¶ 25} As noted previously, Drenski testified that defendant struck her in the lower neck/upper back area, which caused a type of "whiplash" injury, and that when she fell, she scraped her knee and hit her hand. Although Drenski stated that she did not go to the hospital, we nonetheless conclude that the jury did not lose its way in finding that defendant caused physical harm to Drenski.
 {¶ 26} The second assignment of error is without merit.
 {¶ 27} The third assignment of error states:
 {¶ 28} "It was plain error for the trial court to allow a defendant to be convicted and sentenced for both robbery of a motor vehicle and receiving stolen property of an item inside the motor vehicle."
 {¶ 29} Defendant next contends that all of the property inside the vehicle was taken as a natural result of theft of the car, and the trial court therefore erred in separately convicting him both of receiving stolen property in connection with the vehicle's contents. In support of this argument, defendant relies upon the Supreme Court's decision Statev. Fischer (1977), 52 Ohio App.2d 53, 368 N.E.2d 332, in which the Court held that "[t]he act of stealing a motor vehicle containing personal property constitutes one offense and a defendant may not be additionally convicted of stealing the personalty." Id., paragraph two of the syllabus.
 {¶ 30} The state concedes the error. Accord State v. Long (Sep. 18, 1990), Mahoning App. No. 89 CA 78. Accordingly, these offenses must be merged for purposes of sentencing.[1]
 {¶ 31} Defendant's fourth assignment of error states:
 {¶ 32} "The trial court erred by denying a motion for acquittal on the charge of obstruction of official business because the facts asserted at trial deviated from the factual allegations in the indictment and bill of particulars."
 {¶ 33} Within this assignment of error, defendant notes that, in the indictment and bill of particulars, the state charged that defendant obstructed official business, and the state asserted that in committing such offense, defendant created a risk of physical harm to Officer Scott. Defendant complains that this factual basis was not presented at trial, however, as Officer Scott testified that defendant merely gave an untrue name.
 {¶ 34} The offense of obstructing official business is defined in R.C. 2921.31 as follows:
 {¶ 35} "(A) No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties."
 {¶ 36} A bill of particulars purpose is to `particularize the conduct of the accused to constitute the charged offense. In State v. Sellards
(1985), 17 Ohio St.3d 169, 478 N.E.2d 781, the court held that it is not the purpose of the bill of particulars "to provide the accused with specifications of evidence or to serve as a substitute for discovery." Accord State v. Waszily (1995), 105 Ohio App.3d 510, 664 N.E.2d 600.
 {¶ 37} In this matter, Officer Scott testified that it was difficult to handcuff defendant because he was uncooperative, and that he ultimately had to administer pepper spray to subdue him. Accordingly, we cannot credit defendant's contention that state abandoned its original theory of the case and was introducing a "distinct and unexpected theory of guilt." Accord State v. Stayton (1998), 126 Ohio App.3d 158,709 N.E.2d 1224.
 {¶ 38} The fourth assignment of error is without merit.
 {¶ 39} The fifth assignment of error state:
 {¶ 40} "The trial court failed to make the necessary findings to sentence defendant to a consecutive term for escape, since the Ohio Revised Code Section 2929.14(E)(2) does not mandate a consecutive sentence unless the defendant is an inmate at the time of the offense."
 {¶ 41} Within this assignment of error, defendant asserts that the trial court erred in imposing a consecutive sentence for the offense of escape, the third count of the indictment. In fact, the record reflects that the trial court imposed a consecutive sentence for failure to comply, the second count of the indictment. (Tr. 352-353). See, also, Sentencing Journal Entry. Such sentence is correct for the offense of failure to comply. R.C. 2921.331(D).
 {¶ 42} This assignment of error lacks support in the record and is overruled.
 {¶ 43} The sixth assignment of error states:
 {¶ 44} "The trial court did not make the statutorily required findings to impose a consecutive sentence for failure to comply because the mandatory language of R.C. 2921.331 is ambiguous."
 {¶ 45} Pursuant to R.C. 2921.331(D):
 {¶ 46} "If an offender is sentenced pursuant to division (C) (4) or (5) of this section for a violation of division (B) of this section, and if the offender is sentenced to a prison term for that violation, the offender shall serve the prison term consecutively to any other prison term or mandatory prison term imposed upon the offender."
 {¶ 47} In State v. Bailey, Cuyahoga App. No. 81498, 2003-Ohio-1834, the court stated that there is nothing ambiguous about this statute. Likewise, in this case, we cannot accept defendant's claim that this language is poorly drafted and ambiguous. In
 {¶ 48} In this matter, failure to comply with the order of a police officer along with a specification indicating that he caused a substantial risk of physical harm to persons or property in violation of R.C. 2921.331(C)(5)(a)(ii), consecutive sentences were required under R.C. 2921.331(D).
 {¶ 49} The sixth assignment of error is without merit.
 {¶ 50} The seventh assignment of error states:
 {¶ 51} "The trial court erred by failing to make the required findings to impose a combined prison term in excess of the maximum sentence for robbery."
 {¶ 52} Within this assignment of error, defendant asserts that the trial court violated R.C. 2929.19(B)(2)(e) because it failed to make a finding giving its reasons for imposing a total sentence of eleven years, as such sentence exceeds the eight year maximum for second degree felonies set forth in R.C. 2929.14(A)(2).
 {¶ 53} A trial court's requirement to make findings on the record when imposing a maximum sentence is governed by R.C. 2929.14(C), which states in pertinent part, that:
 {¶ 54} "* * * The court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense pursuant to [R.C. 2929.14(A)] only upon offenders who committed the worst form of the offense, upon offenders who pose the greatest likelihood of committing future crimes, [or upon certain major drug offenders and repeat violent offenders.]"
 {¶ 55} R.C. 2929.19(B)(2)(e) also states that the trial court must state its reasons for imposing the maximum sentence:
 {¶ 56} "If the sentence is for two or more offenses arising out of a single incident and it imposes a prison term for those offenses that is the maximum prison term allowed for the offense of the highest degree by [R.C. 2929.14(A)] * * * [.]"
 {¶ 57} R.C. 2929.19(B)(2)(e) has been interpreted to require reasons when consecutive sentences for offenses arising from a single incident meet or exceed the statutory maximum for the offense of the highest degree. See State v. Beard (Sept. 5, 2000), Clermont App. No. CA2000-02-012; State v. O'Linn (Mar. 16, 2000), Cuyahoga App. No. 75815, unreported; State v. Agbesua (Jan. 5, 2001), Greene App. No. 2000-CA-23, unreported.
 {¶ 58} Pursuant to R.C. 2929.14(C), the court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense pursuant to division (A) of this section only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders under division (D)(3) of this section, and upon certain repeat violent offenders in accordance with division (D)(2) of this section.
 {¶ 59} In the case at bar, the record demonstrates that defendant was sentenced for more offenses which spanned the duration of time beginning when he robbed Drenski, failed to stop, separately handled and received property from her purse and wallet, fled from the officers at the Justice Center, and provided false information at booking. The trial court could properly conclude that the offenses did not arise out of a single incident. In any event, the trial court recited defendant's lengthy criminal history at the sentencing hearing, and also noted that defendant was on probation at the time of the instant offenses. The court stated that the sentence was necessary to fulfill the purposes of sentencing, was not disproportionate to the seriousness of defendant's conduct, and were needed to adequately protect the public. (Tr. 532-353).
 {¶ 60} This assignment of error is without merit.
 {¶ 61} Defendant's conviction is affirmed, but the matter is remanded for resentencing.
It is ordered that appellee and appellant share equally the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Sweeney, J., and Corrigan, J., concur.
[1] It is plain error to impose multiple sentences even if the sentences are run concurrently. State v. Crowley (2002),151 Ohio App.3d 249, 255, 2002 Ohio 7366, 783 N.E.2d 970.